# Kessler's Estate.

*Wills—Legacies—Two legacies in same amount—Repetition—Evidence—Burden of proof.*

1. Where two legacies of equal amounts are bequeathed to the same legatee in one and the same instrument, the second bequest is regarded as mere repetition, and the beneficiary takes but one legacy, unless there is internal evidence of a contrary intent appearing in the instrument.

2. Under such circumstances, he who asserts that two gifts were intended, has the burden of showing it from the instrument making the gift or gifts.

*Wills — Construction — Intention — Contingency — Residuary clause—Two legacies in same amount.*

3. Where the apparent intent of a testator is to give to the legatee a stated amount to be paid to him only on the happening of a specified contingency, general language in a residuary clause will be construed in accordance with that intent, and will not be enlarged to give an additional or greater sum, unless the language used expresses that intent with reasonable certainty.

Argued December 2, 1926. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

Appeal, No. 230, Jan. T., 1926, by Arthur Littleton, guardian ad litem for George Kessler Schaeffer, a minor grandson of testator, from decree of O. C. Phila. Co., April T., 1925, No. 1686, dismissing exceptions to adjudication in estate of George Kessler, deceased. Affirmed.

Exceptions to adjudication of VAN DUSEN, J.

The opinion of the Supreme Court states the facts.

Exceptions dismissed by the court in banc, GEST and THOMPSON, JJ., dissenting. Arthur Littleton, guardian ad litem, appealed.

*Error assigned* was, inter alia, decree, quoting record.

*Clement B. Wood,* with him *John M. Clarke,* for appellant.—Where two legacies are given by the same testamentary instrument for the benefit of the same person, but have substantially different incidents, the second legacy is presumed to be cumulative: Sponsler's App., 107 Pa. 95; Manifold's App., 126 Pa. 508; Harrison's Est., 196 Pa. 576; Ashmead's Est., 29 Pa. Dist. R. 128; Swain's Est., 29 Pa. Dist. R. 361.

The two gifts were of different character and were not repetitions as held by the majority of the orphans' court.

Testator by the language used in his will clearly intended to include his grandson George Kessler Schaeffer as the issue of a child not living at the time of distribution, in the gift of his residuary estate: Park's Est., 21 W. N. C. 227.

*George A. Block,* of *Wolf, Block, Schorr & Solis-Cohen,* for Harry C. Kessler, Robert H. Kessler and Anna Kessler Martin, appellees.—The grandson is not entitled to two legacies of eighty thousand dollars: Sponsler's App., 107 Pa. 95; Manifold's App., 126 Pa. 508; Ashmead's Est., 29 Pa. Dist. R. 128; Powell's Est., 138 Pa. 322; Swain's Est., 29 Pa. Dist. R. 361.

The grandson is not a residuary legatee: Disston's Est., 257 Pa. 537.

The general intent of testator should be followed: Bennett's Est., 270 Pa. 397; Lefebvre v. D'Arcy, 236 Pa. 235.

A will should be interpreted to avoid an intestacy: Biles v. Biles, 281 Pa. 565.

*Fletcher W. Stites,* for George Kessler, Jr., and Charles A. Kessler, appellees.—The will provided a single bequest of eighty thousand dollars, in trust, for the grandson: Powell's Est., 138 Pa. 322; Swain's Est., 29 Pa. Dist. R. 361.


OPINION BY MR. JUSTICE SIMPSON, January 3, 1927:

Decedent left an estate of more than $840,000 and, like every other "jolly testator who makes his own will," so badly worded that document as to invite if not compel litigation before his desires could be ascertained and carried into effect. He left surviving him a wife, five children and a grandson—the latter the only child of a deceased daughter who died eleven days before the will was made. By his will he gave the balance of his estate to his executors and trustees, in trust to pay to his wife an annuity of $12,000 for life, giving her also the use of their home and its contents; to pay to each of his five children, naming them as such, an annuity of $2,500 without specifying how long the payments should continue, and then provided as follows: "I also authorize and direct my executors and trustees to pay unto the guardian of my grandson George Kessler Schaeffer such sum or sums of money from the income of my estate as they in their discretion may deem necessary for the proper support, maintenance and education of my said grandson, not exceeding $2,000 yearly. immediately after the death of my dear Wife Elizabeth Kessler, I order and direct my executors and trustees to pay over to the Integrity Trust Co. Guardian hereinafter appointed for my said grandson, Geo. Kessler Schaeffer the sum of $80,000 in trust nevertheless to for and upon the following uses intents and purposes that is to say to invest and keep invested the principal of this trust fund and to pay from the income of this fund such sum or sums of money as my said guardian may in his consideration deem necessary for the proper support maintenance and education

of my said grandson George Kessler Schaeffer not exceeding $2,000 per annum, the balance of said income of said trust fund I direct the said guardian to add to the principal of this trust fund during the minority of my said grandson. immediately upon the arrival of my said grandson George Kessler Schaeffer at the age of 21 years I order and direct the said guardian to pay the principal and accumulated income of this trust fund unto my said grandson George Kessler Schaeffer absolutely. should my said grandson George Kessler Schaeffer die before he arrives at the age of 21 years, then I give and bequeath the principal and accumulated income of this trust fund to my children and their issue such issue taking by representation absolutely. immediately after the death of my dear wife Elizabeth Kessler I order and direct my executors and trustees or the survivor or survivors of them to make the following division and partition of my estate. Eighty Thousand dollars ($80,-000.00) to the guardian of my grandson George Kessler Schaeffer. the residue of my estate real and personal of which I may die possessed I give order and direct my executor and trustees or the survivor or survivors of them to my children who at the time may be living share and share alike. the issue of any of my children taking and receiving only the parent's share. should any of my children die without issue then he or her share to be divided equally between the surviving heirs share and share alike."

The widow elected to take against the will, the effect of which (there being nothing compelling a contrary conclusion) was to require distribution to be made exactly as if she had then died, the other gifts being accelerated so as to take effect at once: Ferguson's Est., 138 Pa. 208; Disston's Est., 257 Pa. 537. At the audit of the executor's account, the guardian of the grandson claimed that he was entitled to have, under the above-quoted paragraph, two sums of $80,000 each, and also to share the residue of the estate with testator's children. The

court below decreed against both of these contentions, and this appeal by his guardian followed.

As applicable to the first of those claims, it is said in 40 Cyc. 1560: "In the absence of internal evidence of intent, the following rules of construction have been generally adopted to determine whether a legacy be cumulative or substitutional.....2. Where two legacies of quantity of equal amount are bequeathed to the same legatee in one and the same instrument, the second bequest is regarded as mere repetition and the beneficiary takes but one legacy." Thus, also, the rule is stated in Thompson v. Betts, 74 Conn. 576; Leighton v. Leighton, 193 Iowa 1299; Dickinson v. Overton, 57 N. J. Eq. 26; Underhill's Law of Wills, 570.

Apparently this legal conclusion is not challenged by appellant, who claims, however, that there is, in testator's will, "internal evidence of [a contrary] intent." This is alleged to be found in the fact that, where the $80,000 is first referred to, there are elaborate provisions in regard thereto, including a gift over to testator's children, should the grandson "die before he arrives at the age of twenty-one years," whereas, where it is last referred to, the gift is absolute without any clogging conditions. It is, of course, conceded that where the will shows that two legacies are intended, it must be so construed; but the burden of showing this, under the authorities cited, is on the legatee, and it has not been carried in the present instance. If but one gift was intended, and the second reference was merely a briefly stated repetition of the first, as we think it was, then no evidence of a contrary intent appears in the second reference to it, and the so-called guardian (who is really a trustee) must carry out the trust in accordance with the detailed directions given when the gift was first stated.

The same conclusion is reached when the will is analyzed. In the first part of it, testator is dealing with the income from his estate. Until his wife dies, she is to get

$12,000 per annum out of it, each of the five children are to get $2,500 per annum, and there is to be expended for the grandson, a sum not exceeding $2,000 per annum. This makes a total expenditure of $26,500, which is a little over three per cent on the value of the estate. As president of a bank he must have known that, in all human probability, a much larger income would be received. Evidently his great care was that as long as his wife lived his distributees should certainly receive the annuities provided.

Up to this time there is no gift of any definite sum to or for the grandson, but now testator takes up the question of distribution of the principal of his estate "immediately after the death of my dear wife," and he first sets apart $80,000 out of the income, of which the trustee named was to expend "not exceeding $2,000 per annum" for the benefit of the grandson, the balance of the income to be cumulated with the principal and the gross sum paid to the grandson when he reached 21 years of age; whereas, if he died before attaining that age, it was to go to his, testator's, children, and their issue. He then directs—using the same language as above quoted in relation to setting apart the $80,000, "immediately after the death of my dear wife"—his executors and trustees "to make the following division of my estate" (not the residue of his estate after deducting the $80,000 above referred to—the word "residue" being in fact used immediately thereafter in the ultimate gift to the children) : $80,000 to the guardian of his grandson, and the residue to his children and their issue. Had he inserted the word "the" before the "$80,000," his meaning would have been clear; its omission does not, however, prove that there were two gifts of like amount to the same person. If he intended to give, to or for the benefit of his grandson, the sum of $160,000 "immediately after the death" of his wife, no reason appears why he should have divided it into separate bequests. If he felt that $2,000 per annum was all

that was necessary to be expended "for the proper support, maintenance and education" of the grandson during minority, as he twice states, why did he not direct that an accumulation should be made of the surplus of the alleged second gift, during minority, exactly as he did regarding the first? If, as the will specifies, he desired all accumulations of the first $80,000 to go to his, testator's, children if the grandson died during his minority, why should he have made the second alleged gift an absolute one, so that it and its accumulations would go to the grandson's next of kin, those ex parte paterna, if any, receiving a share of it, though not of the blood of testator? We find no adequate answer to these inquiries, except on the basis that a single gift was intended; and hence are driven to the conclusion that appellant has not shown, by the will, that there was "internal evidence of intent" compelling the conclusion that two gifts were intended.

We are clear, also, that appellant has no interest in what testator calls "the residue of my estate," that is, the balance after the $80,000 is given to the trustee for the grandson. The clause out of which this question arises is as follows: "the residue of my estate......I give, order and direct my executors and trustees or the survivor or survivors of them to my children who at the time may be living, share and share alike the issue of any of my children taking and receiving only the parent's share.  should any of my children die without issue then he or her share to be divided equally between the surviving heirs share and share alike." At this point "the jolly testator" again gets in his deadly work. It is clear to us, however, that the words "my children" where first used evidently refer to the five children living when the will was made, and specifically named by him therein as his children. Testator's daughter, the mother of the grandson, is not mentioned in the will. In the immediately preceding sentence, testator provides that if his grandson should die before reaching 21 years

of age, the $80,000 is to go to "my children." This can only mean the five living children. When the same phrase is twice repeated in the immediately succeeding gift of the residue, it must have the same meaning. True, in order to make equality of distribution, slight reasons will sometimes turn the scale in favor of remoter descendants, but here there are no such reasons, and the effect of permitting appellant to share in this residue, would be to give him at least $80,000 more than any of testator's children. Yet it is clear throughout the will that testator intended the grandson should get less and not more than the children, the former's interest, in every phase of the matter, being limited to a fixed sum, which, under no circumstances, was to go to him unless he reached the age of twenty-one years. We can see no reason, therefore, why the clause referring to the death of one of the children without issue should be construed to enlarge the grandson's share.

The decree of the court below is affirmed and the appeal is dismissed at the cost of appellant.