Golden's Estate.

Argued October 14, 1935. Before FRAZER, C. J., KEPHART, SCHAFFER, MAXEY, DREW, LINN and BARNES, JJ.

*Frederic W. Miller,* with him *Joseph J. Goldsmith,* for appellant.

*Oliver K. Eaton,* with him *John F. Conley,* for appellees.

PER CURIAM, November 25, 1935:

Patrick Golden died October 21, 1933, having previously on October 16, 1933, made his last will and testament as follows: "I wish to leave my wife Winnie Golden all my possessions during her lifetime after which I leave share & share alike to all my children or their heirs, except Robert who is to receive $10,000 more than the rest without restrictions." The widow elected to take against the will.

At the time of his death testator left surviving him his widow, two sons and one daughter, viz., Robert Golden, John A. Golden and Ella E. Cunningham. Additional to these, he had also five living grandchildren, the children of deceased children, namely, Vincent J. Joyce and Gladys Joyce Kennedy, children of Mary Golden Joyce, deceased, and John C. Golden, Mary C. Stanton and William E. Golden, children of Patrick Golden, deceased. Testator was also the father of three other children who died in infancy without descendants.

The questions raised for consideration and determination under testator's will were properly disposed of in the lower court, and we now adopt the following excerpts from the opinion of Judge TRIMBLE in disposing of the case:

"The question now is: Who are the heirs of the deceased children of Patrick Golden who were living at the time he made his will and at the time of his death?

In Wunder's Est., 270 Pa. 281, 283, followed in Simpson's Est., 304 Pa. 396, it is said: 'Where the word "heirs" is used in a bequest of personalty, it means heirs as ascertained by the statutes of distribution, unless a contrary intent is indicated by the will.' Contrary to the conclusion in Wunder's Estate, counsel argues that there is only one fair interpretation of the will and that is, when testator said 'all my children,' he meant Ella, John, and Robert who are not designated by name. And he concludes that 'or their heirs' is an alternative of substitutionary provision in the event of the death of Ella, John or Robert before the termination of the life estate and there is nothing in the will to indicate otherwise or to suggest an intent to benefit grandchildren. The cases cited, as we read them, are not applicable here except in so far as they preclude distribution to the heirs of the three children who died in infancy before the will was written. Counsel further argues to sustain the decree that the estate vested in the three living children or their heirs and relates the vesting to the time of the termination of the life estate because when testator created this life estate he said 'after which I leave share & share alike.' As we read this portion of the will, it means simply that he gave his wife a life estate with remainder, share and share alike, to all his children or their heirs with possession postponed until the termination of the life estate and we are unable to adopt the view that vesting is postponed until the termination of the life estate.

"Counsel for the grandchildren living at his death, answering the argument that 'all my children' referred to Ella, John, and Robert and that 'their heirs' referred to their children only, relies specifically upon Sorver v. Berndt, 10 Pa. 213, to show that testator intended to use the word 'and' as a connective and not 'or' as a disjunctive and by changing the phrase 'or their heirs' to 'and their heirs' there was an intent to give to the children first but, if they were dead, then by description to the legal heirs as descriptio personae of those entitled to

take. And he arrives at the conclusion that the grandchildren here, as in that case, come within the description and are entitled to take to the exclusion of all other persons except the three children who were living at the date of testator's death. We are unable to adopt his conclusion because, after reading Gilmor's Est., 154 Pa. 523, it is said that 'or' never means 'and' unless there is a context which shows it is for 'and' by mistake. In Simpson's Est., supra, and many others there cited, it appears that a gift to A 'and' his heirs is single, taking effect either at one and the same time or else not taking effect at all, and a gift to A 'or' his heirs is in the alternative clearly indicating both A and his heirs as the objects of the gift, the heirs taking in the event of the nonexistence of A. We may also refer to Griffith's v. Woodward, 1 Yates 318, where it is said that: 'Courts of justice will transpose the clauses of a will and construe "or" to be "and" and "and" to be "or" only in such cases when it is absolutely necessary so to do to support the evident meaning of the testator, but they can not arbitrarily expunge or alter words without such apparent necessity.'

"Testator's language seems to be very clear. His wife, his children, his son-in-law and daughter-in-law, and his grandchildren were in his mind when he wrote his will disposing of the remainder of his estate share and share alike 'to my children or their heirs.' The heirs must be determined by the statutes of distribution unless a contrary intent is indicated by the will.

"It follows that the decree [of December 13, 1934] must be modified so that the distribution will be made to the three living children and to the spouses and children of deceased children who were living at the testator's death and it will be so ordered."

The decree of the lower court made March 18, 1935, with its order of distribution, is affirmed. Costs to be paid by appellant.