## Lawrence Trust (No. 2)

*Edgar Downey*, for accountant.

*Fred J. Wiest, Jr.*, for Gertrude A. Lawrence Estate.

GANGLOFF, P. J., January 14, 1952.—An exception has been filed by Claire L. Bergvoll, a party in interest, to the decree of distribution entered on December 24, 1951. This exception is limited, however, to that portion of the decree which directs distribution of the balance of principal amounting to $4,422.29. Exceptant contends that "the surviving brothers and sisters or their heirs" to whom is given the fund held in trust for Gertrude A. Lawrence, upon the death of the latter "unmarried and without issue", should be limited to the children of testatrix, Lavinia B. Lawrence, other than Gertrude A. Lawrence, living at the time she executed her will. If this contention is the correct construction to be given to the words quoted, namely, "the surviving brothers and sisters or their heirs" then the auditing judge erred in including Hattie Stupp, a daughter who died before the will was ex-

ecuted, as one of "the surviving brothers or sisters or their heirs".

Testatrix disposed of her personal estate and her real estate as separate estates. Her personal estate, with the exception of certain portions of no material interest here, was "to be equally divided into six equal portions" and distributed one sixth to her daughter, Carrie I. Lawrence; one sixth to her son, Willis J. Lawrence; one sixth to her daughter, Fannie Lawrence Crawford; one sixth to her son, George B. Lawrence; one sixth in trust for her daughter, Gertrude A. Lawrence, "for and during her natural life, and in the event of the death of my daughter, Gertrude A. Lawrence, unmarried and without issue, then and in that event the money so held in trust . . . shall be equally divided among the surviving brothers and sisters or their heirs, share and share alike;" and the remaining one sixth to her granddaughter, Lavinia Stupp, "daughter of my deceased daughter, Hattie Lawrence", to be held in trust for her until she attains the age of 30 years. We are not here concerned with this latter trust except to note that testatrix provides in her will that "in the event of the death of my granddaughter, the said Lavinia Stupp before she arrives at the age of thirty years or other termination of said trust as aforesaid, then in that event" the trust fund shall be divided share and share alike "among my children", namely, the five children above mentioned as living when the will was executed.

As to her real estate, the property located at the corner of Sunbury and Third Streets, in Minersville, our county, testatrix directs that this property "shall be held and possessed intact by my heirs above named, viz Carrie I. Lawrence, Willis J. Lawrence, Fannie Lawrence Crawford, Gertrude A. Lawrence, George B. Lawrence and Lavinia Stupp, until such time as the majority of them shall desire to sell the same." A sale

was made as pointed out in our adjudication of the substituted trustee's account. As to the proceeds of such sale the testatrix directs distribution thereof "share and share alike to and among my children and granddaughter, viz" here follow the names of the five children and the grandchild above mentioned but there is a proviso that the shares of Gertrude A. Lawrence and Lavinia Stupp are "to be and remain in trust and under conditions as set forth in paragraphs nine and ten of this my will." The latter paragraphs, 9 and 10, are those that deal with the personal estate and the disposition thereof among the five children and the grandchild, as hereinbefore already detailed.

Thus far we have traced what may be termed the primary dispositions of her estate as made by testatrix. In these primary dispositions of both her personal estate and her real estate she clearly defines her "heirs" as her five named children and her named granddaughter. These are the beneficiaries of both her personal estate and her real estate. Distribution was made accordingly.

In this case the "dead hand" was extended beyond what we have termed the primary dispositions, to secondary dispositions of the remainder after the death of Gertrude A. Lawrence "unmarried and without issue" (she so died) and of the remainder in event the granddaughter should not attain the age of 30 years. We are only concerned with the disposition of the remainder over upon the death of Gertrude A. Lawrence. This remainder is to be divided equally "among the surviving brothers and sisters or their heirs."

In both of the primary dispositions made by testatrix there are but five persons who could qualify as brothers and sisters, namely, the five named by

testatrix. To each of these she gives a one-sixth share, four of which are absolute dispositions and one is in trust for Gertrude. The remaining one-sixth share was given to the child of a deceased sister of the five brothers and sisters named in the will, namely, Hattie Lawrence Stupp. Obviously, the latter was not a "surviving" sister at the time the will was executed. The word, "surviving", must be construed as having its ordinary meaning, there being nothing in the will to indicate otherwise. Taking into consideration the whole will, as we must, it seems clear enough that surviving brothers and sisters can and does mean those who were such at the time the will was executed, namely, the five children named in the will.

We then take the next step. These same surviving children (brothers and sisters), other than Gertrude, are to take the trust estate held for the latter upon her death unmarried and without issue "or their heirs". That the pronoun "their", as used here, refers to the five surviving children other than Gertrude admits of no doubt. And here is where the rule in Simpson's Estate, 304 Pa. 396, cited in the adjudication, controls. We must therefore limit "heirs", as here used, to heirs of the four deceased "surviving" children and of course this eliminates Hattie Stupp as a surviving sister.

Accordingly, the exception is sustained insofar as it relates to the distribution of principal. . . .

And now, January 14, 1952, the exception is sustained but only to the extent hereinabove mentioned, the decree of distribution entered on December 24, 1951, is opened and set aside but only insofar as it relates to distribution of principal and it is now adjudged, ordered and decreed that the balance of principal be and hereby is awarded to the respective distributees and in the respective amounts designated.